BRYAN SCHRODER
Acting United States Attorney

RETTA-RAE RANDALL
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: rettarae.randall@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  vs.<br><br>CASEY RICHARDSON,<br>DALE LACKNER, and<br>JEFFREY HARRIS,<br><br>     Defendants. | No.<br><br>COUNTS 1, 5, 7, 9, and 11:<br>CONSPIRACY TO VIOLATE THE<br>LACEY ACT<br> Vio. of 18 U.S.C. § 371<br><br>COUNTS 2, 6, 8, 10, and 12:<br>FALSE RECORD<br> Vio. of 16 U.S.C. §§ 3372(d)(2) and<br>3373(d)(3)(B) and 18 U.S.C. § 2<br><br>COUNT 3:<br>VIOLATION OF THE LACEY ACT<br> Vio. of 16 U.S.C. §§ 3372(a)(2)(A),<br>3373(d)(2), and 3373(d)(3)(B)<br><br>COUNTS 4 and 13:<br>FALSE STATEMENTS<br> Vio. of 18 U.S.C. § 1001(a)(2) |

)   COUNT 14:
)   UNLAWFUL BAITING OF GAME
)     Vio. of 36 C.F.R. § 2.2(b)(4) and
)   18 U.S.C. § 2
)
)   COUNT 15:
)   CONSPIRACY TO USE SUBSTANCE
)   TO INCAPACITATE GAME
)     Vio. of 18 U.S.C. § 371
)

_____

# I N D I C T M E N T

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

1.     Wrangell-St. Elias National Park and Preserve ("WRST"), Alaska, is managed by the National Park Service, Department of the Interior.

2.     The National Park Service ("NPS") has the authority to enforce Title 16 of the United States Code within the exterior boundaries of WRST.

3.     The United States Fish and Wildlife Service is also authorized to enforce Title 16 of the United States Code within the confines of WRST.

4.     Unindicted Co-conspirator A, a resident of Alaska, was a registered guide/outfitter with the State of Alaska.

5.     Ptarmigan Lake Lodge ("PLL") operated as a sole proprietorship, was located within WRST and permitted to operate as a concessionaire to provide sport hunting guide services under NPS contract CC-WRST012-07.  The hunt area within

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 2 of 31

WRST, and where the hunting activities were conducted is within the boundaries of State of Alaska Game Management Unit 12.

6.     CASEY RICHARDSON was a resident of Montana. RICHARDSON was not a registered licensed guide with the State of Alaska in 2014 and 2015.

7.     DALE LACKNER was a resident of Alaska. LACKNER received his assistant guide license on June 18, 2015 (#100610).

8.     JEFFREY HARRIS, a resident of the State of Washington, was employed by the PLL as a horse wrangler. HARRIS also performed maintenance functions for the lodge. HARRIS was not a guide-outfitter or assistant guide registered with the State of Alaska in 2014 and 2015.

9.     In 2014 no hunt reports were submitted by PLL to the Alaska Big Game Commercial Services Board or to the NPS, as required by PLL's Big Game Guide License and PLL's concession with the NPS. Failure to file hunt reports indicated to the State of Alaska and the Big Game Commercial Services Board that no wildlife had been harvested by PLL clients in hunt year 2014.

10.    Hunter C.M. was a resident of South Dakota.

11.    Hunter R.C. was a resident of Alaska.

12.    Hunter D.W. was a resident of Arkansas.

13.    Hunter J.W. was a resident of Georgia.

14.    Hunter S.T. was a resident of Montana.

## RELEVANT LAW AND REGULATIONS

### **Federal Laws and Regulations**

15.     The Lacey Act, Title 16, United States Code, § 3372(a)(1) makes it unlawful for any person to transport, sell, receive, acquire, or purchase any wildlife taken, possessed, transported, or sold in violation of any law, treaty, or regulation of the United States.

16.     The Lacey Act, Title 16, United States Code, § 3372(a)(2)(A) makes it unlawful for any person to transport, sell, receive, acquire, or purchase in interstate commerce any wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State.

17.     The Lacey Act, Title 16, United States Code, § 3372(c)(1), states that it is deemed to be a sale of wildlife in violation of this chapter for a person for money or other consideration to offer or provide guiding, outfitting, or other services.

18.     The Lacey Act, Title 16, United States Code, § 3372(c)(2), states that it is deemed to be a purchase of wildlife in violation of this chapter for a person to obtain for money or other consideration guiding, outfitting, or other services.

19.     The Lacey Act, Title 16, United States Code, § 3372(d)(2) makes it unlawful for any person to make or submit any false record, account, or label for any wildlife which has been, or is intended to be, transported in interstate commerce.

20.     Title 36, Code of Federal Regulations, § 2.2(a)(1) makes it unlawful for any person to take wildlife in a national park, except by authorized hunting and trapping activities conducted in accordance with paragraph (b) of this section.

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 4 of 31

21.     Title 36, Code of Federal Regulations, § 2.2(b)(4) requires where hunting or trapping or both are authorized, such activities shall be conducted in accordance with Federal law and the laws of the State within whose exterior boundaries a park area or a portion thereof is located.  Non-conflicting State laws (Alaska State Statutes) are adopted as a part of these regulations.

22.     Title 36, Code of Federal Regulations, § 13.42(b) makes it unlawful to hunt on a national preserve in violation of either Federal or non-conflicting State laws or regulations.

23.     Title 36, Code of Federal Regulations, § 13.42(g)(2) as of January 1, 2016, prohibits using on a national preserve any poison or other substance that kills or temporarily incapacitates wildlife.

## State of Alaska Laws and Regulations

24.     Alaska State Statute 08.54.600: "Duties of the board": provides that (a) The board [Big Game Commercial Services Board] shall (2) authorize the issuance of registered guide-outfitter, master guide-outfitter, class-A assistant guide, assistant guide, and transporter licenses after the applicant for the license satisfies the requirements for the license.

25.     Alaska State Statute 08.54.720(a)(6): "Unlawful acts" prohibits a person from knowingly guiding a big game hunt without having a current registered guide-outfitter, class-A assistant guide, or assistant guide license and a valid Alaska hunting license in actual possession.

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 5 of 31

26.     Alaska State Statute 08.54.790(9): "guide" means to provide, for compensation or with the intent or with an agreement to receive compensation, services, equipment, or facilities to a big game hunter in the field by a person who accompanies or is present with the big game hunter in the field either personally or through an assistant; in this paragraph, "services" includes:

> (A) contracting to guide or outfit big game hunts;
>
> (B) stalking, pursuing, tracking, killing, or attempting to kill big game;
>
> (C) packing, preparing, salvaging, or caring for meat, except that which is required to properly and safely load the meat on the mode of transportation being used by a transporter;
>
> (D) field preparation of trophies, including skinning and caping;
>
> (E) selling, leasing, or renting goods when the transaction occurs in the field;
>
> (F) using guiding or outfitting equipment, including spotting scopes and firearms, for the benefit of a hunter; and
>
> (G) providing camping or hunting equipment or supplies that are already located in the field.

27.     Alaska State Statute 16.05.330(a)(2) makes it unlawful for a person to hunt without having the appropriate license or tag in possession.

28.     Alaska State Statute 16.05.340(a)(15) requires nonresident big game hunters to obtain hunting tags in order to lawfully hunt big game.

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 6 of 31

29.     Alaska State Statute 16.05.370: "Reports by licensees": provides that the commissioner may require a report to be made by each licensee concerning the time, manner, and place of taking fish and game, the kinds and quantity taken, and other information helpful in administering the fish and game resources of the state.

30.     Alaska State Statute 16.05.407 requires that nonresident hunters hunting big game animals must be accompanied by a licensed registered/master guide for nonresident hunting of brown bear, goat and sheep.

31.     Title 5, Alaska Administrative Code, 92.044(a): "A person may not establish a bear bait station to hunt bear with the use of bait or scent lures without first obtaining a permit."

32.     Title 5, Alaska Administrative Code, 92.080(2) makes unlawful, without permission from the State of Alaska, the use of any poison or other substance that temporarily incapacitates game.

33.     Title 5, Alaska Administrative Code, 92.990 (60) – Definitions:

Personally Accompanied - means staying within 100 yards of the person being accompanied at the point where an attempt to take game is made.

## COUNT 1
## CONSPIRACY TO VIOLATE THE LACEY ACT
### (C.M. Sheep)

34.     Paragraphs 1 through 33 of this Indictment are hereby realleged in their entirety and incorporated by reference herein.

35.     Between on or about June 10 and August 22, 2014, within the District of Alaska, and elsewhere, JEFFREY HARRIS, Unindicted Co-conspirator A, and others

known and unknown to the Grand Jury, did knowingly combine, conspire, agree and plan with each other to commit acts in violation of the laws of the United States, to wit:

To unlawfully and knowingly sell in interstate commerce wildlife with a market value in excess of $350, by providing guiding, outfitting and other services, for money and other consideration, for the illegal taking, transporting and possessing in interstate commerce of wildlife, that is, a Dall Sheep, knowing that the wildlife had been taken, possessed and transported in violation of and in a manner unlawful under the laws and regulations of the State of Alaska, specifically Alaska State Statute 16.05.407.

In violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(B).

## MANNER and MEANS

36. The manner and means by which the conspiracy was carried out by the defendants, HARRIS, and Unindicted Co-conspirator A included the following:

In August 2014 a PLL client Hunter C.M., having made a deposit for a guided Dall Sheep hunt in Alaska with a registered guide, arrived at the PLL to hunt for Dall Sheep. Hunter C.M. was not an Alaskan resident and was therefore required to be accompanied by a registered guide to legally hunt for Dall Sheep in Alaska. HARRIS, who was not an Alaskan resident nor a registered guide, guided Hunter C.M. on his hunt. Paperwork was filled out falsely by HARRIS to conceal the fact that Hunter C.M. illegally hunted and killed a Dall Sheep without being accompanied by a registered guide. The Dall Sheep trophy was transported from the field and shipped in interstate commerce to the client hunter's home state of South Dakota.

Page 8 of 31

## OVERT ACTS

37.     In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed by the defendants HARRIS, Unindicted Co-conspirator A, and others in the District of Alaska and elsewhere:

(OA1)  On or about June 10, 2014, Hunter C.M. paid Unindicted Co-conspirator A a $4,000 deposit by check for a Dall Sheep hunt in Alaska.

(OA2)  On or about August 20, 2014, Hunter C.M. paid HARRIS a $4,000 trophy fee by check, said check made payable to D.N., HARRIS' girlfriend at that time.

(OA3)  On or about August 20, 2014, the sheep hunt began when HARRIS took Hunter C.M. on a hunt for Dall Sheep.  The men traveled on horseback into a spike camp; they were not accompanied by a licensed guide.

(OA4)  At the beginning of the hunt, HARRIS and Hunter C.M. spotted a herd of sheep that included a mature ram with a full curl.  During the hunt and after stalking the sheep, HARRIS directed Hunter C.M. to shoot.  Hunter C.M. successfully killed the Dall Sheep ram.

(OA5)  After the Dall Sheep was dead, photographs were taken of it.  After the photographs were taken, HARRIS and Hunter C.M. field dressed and skinned the animal for a life sized taxidermy mount. The meat from the ram, the cape, and the head with horns were then transported back to the spike camp where the parties spent the night.

(OA6)  The following morning, HARRIS and Hunter C.M. rode the horses back to PLL with the sheep.

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 9 of 31

(OA7)  On or about August 22, 2014, Unindicted Co-conspirator A and Hunter C.M. signed an Alaska Big Game Commercial Services Board Guide-Outfitter Contract for a Dall Sheep hunt between August 18 and August 30, 2014.

(OA8)  On August 22, 2014, a hunt record completed by HARRIS and Unindicted Co-conspirator A reflected that Hunter C.M. took a sheep on August 20, 2014, in the Cabin Creek area of WRST.  This hunt record was not submitted to the State of Alaska.

(OA9)  Hunter C.M. paid $4,000 in cash to Unindicted Co-conspirator A after the hunt.

(OA10) Hunter C.M. transported the harvested sheep from Alaska to South Dakota.

All of which is in violation of Title 18, United States Code, Section 371.

## COUNT 2
### FALSE RECORD
### (C.M. Sheep)

38.      Paragraphs 1 through 33 of this Indictment are hereby realleged in their entirety and incorporated by reference herein.

39.      On or about August 22, 2014, in the District of Alaska, JEFFREY HARRIS and Unindicted Co-conspirator A did knowingly make a false record and account of wildlife, to wit, a false State of Alaska Big Game Commercial Services Board Hunt Record for a Dall Sheep, in an offense involving the sale and purchase of wildlife with a market value in excess of $350, to wit, a guided Dall Sheep hunt in WRST, knowing that the record and account to be provided to the State of Alaska claimed that Hunter C.M. killed the Dall Sheep ram while being guided by a PLL licensed guide as the "Licensed

Registered Guide-Outfitter, Class-A or Assistant Guide Accompanying Client in the Field" when in truth and in fact, as HARRIS and Unindicted Co-conspirator A then knew, no licensed registered guide-outfitter, Class-A or Assistant Guide was in the field with Hunter C.M. during the hunt.

All of which is in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A)(ii) and Title 18, United States Code, Section 2.

## COUNT 3
## VIOLATION OF THE LACEY ACT
### (Blonde Bear)

40.     Paragraphs 1 through 33 of this Indictment are hereby realleged in their entirety and incorporated by reference herein.

41.     Between on or about August, 2014 and on or about October, 2015, within the District of Alaska, and elsewhere, JEFFREY HARRIS did unlawfully and knowingly transport in interstate commerce wildlife, that is, a blonde grizzly bear in WRST, when in the exercise of due care, HARRIS should have known that said wildlife was unlawfully taken, possessed, and transported in violation of and in a manner unlawful under the laws and regulations of the State of Alaska, specifically Alaska State Statutes 16.05.407 and 16.05.340(a)(15)

All of which is in violation of Title 16, United States Code, Sections 3372(a)(2)(A), 3373(d)(2) and 3373(d)(3)(B).

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 11 of 31

## COUNT 4
## FALSE STATEMENT
### (Blonde Bear)

42.     Paragraphs 1 through 33 of this Indictment are hereby realleged in their entirety and incorporated by reference herein.

43.     On or about May 25, 2016, within the District of Alaska, the defendant JEFFREY HARRIS did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the Department of Interior, U.S. Fish and Wildlife Service, by stating that he killed a blonde grizzly bear on August 10, 2014.  The statement and representation was false because, as HARRIS then and there knew he killed the blonde grizzly bear on or before August 8, 2014, knowing that bear season did not open in State of Alaska Game Management Unit 12 until August 10, 2014.

All of which is in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT 5
## CONSPIRACY TO VIOLATE THE LACEY ACT
### (Richardson Sheep)

44.     Paragraphs 1 through 33 of this Indictment are hereby re-alleged in their entirety and incorporated by reference herein.

45.     On or about September 4, 2014, within the District of Alaska, and elsewhere, CASEY RICHARDSON, DALE LACKNER, and others known and unknown to the Grand Jury, did knowingly combine, conspire, agree and plan with each other to commit acts in violation of the laws of the United States, to wit:

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 12 of 31

To unlawfully and knowingly export and transport in interstate and foreign commerce wildlife, to wit, a Dall Sheep, when in the exercise of due care, RICHARDSON and LACKNER should have known that said wildlife was unlawfully taken and transported in violation of the laws and regulations of the State of Alaska, specifically, Alaska State Statute 16.05.407.

In violation of Title 16, United States Code, Sections 3372(a)(2)(A), 3373(d)(2) and 3373(d)(3)(B).

**MANNER AND MEANS**

46.    The manner and means by which the conspiracy was carried out by the defendants RICHARDSON and LACKNER included the following:

In September 2014, RICHARDSON traveled from his residence in Montana to PLL in Alaska.  RICHARDSON was not an Alaskan resident and was therefore required to be accompanied by a registered guide to legally hunt for Dall Sheep in Alaska. LACKNER was an Alaska resident and allowed to hunt for Dall Sheep without a registered guide.  Paperwork was filled out falsely by LACKNER to conceal the fact that RICHARDSON illegally hunted and killed a Dall Sheep without being accompanied by a registered guide.  RICHARDSON did not file required paperwork for the Dall Sheep he killed to conceal his illegal hunt.  LACKNER arranged for the transportation of RICHARDSON's illegally killed Dall Sheep trophy from the field in Alaska through Canada to RICHARDSON's home state in Montana.

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 13 of 31

## OVERT ACTS

47.     In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed by the defendants RICHARDSON,  LACKNER, and others in the District of Alaska and elsewhere:

(OA1)   On August 30, 2014, RICHARDSON obtained a non-resident brown bear locking tag (#1404543), having obtained an annual non-resident hunting license (#4722517) for the 2014 season on November 27, 2013,

(OA2)   On or about September 1, 2014, RICHARDSON arrived at PLL.

(OA3)   On or about September 3, 2014, RICHARDSON, LACKNER, and Hunter R.C. rode horses out to a location known to those working at PLL as "the High Culvert" and spent the night.

(OA4)   On or about September 4, 2014, RICHARDSON and Hunter R.C. rode the horses up the mountain and disembarked to stalk Dall Sheep up the mountain; LACKNER remained with the horses.

(OA5)   On or about September 4, 2014, RICHARDSON killed a Dall Sheep in the Rocker Creek Tributary.

(OA6)   On September 5, 2014, RICHARDSON posted on his Facebook account: "*Success!!!! Great two days on the mountain with R.C. and DALE LACKNER!  Thank you for letting me part of a great hunt? (sic)*."

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 14 of 31

(OA7)   On or about September 12, 2014, LACKNER completed a State of Alaska Department of Fish and Game Harvest Report for a Dall Sheep identifying himself as the hunter.

(OA8)   RICHARDSON submitted no hunt reports for bear or sheep in 2014.

(OA9)   On or about September 12, 2014, LACKNER exported the Dall Sheep trophy through Canada to RICHARDSON in Montana.

All of which is in violation of Title 18, United States Code, Section 371.

## COUNT 6
## FALSE RECORD
### (Richardson Sheep)

48.     Paragraphs 1 through 33 of this Indictment are hereby re-alleged in their entirety and incorporated by reference herein.

49.     Between on or about September 4, 2014, and September 12, 2014, in the District of Alaska, CASEY RICHARDSON and DALE LACKNER did knowingly make a false record and account of wildlife, to wit, a false State of Alaska Department of Fish and Game Harvest Report for a Dall Sheep, in an offense involving the unlawful and knowing transport in interstate and foreign commerce of wildlife, to wit, a Dall Sheep, when in the exercise of due care, RICHARDSON and LACKNER should have known that said wildlife was unlawfully taken in violation of the laws and regulations of the State of Alaska, knowing that the hunt record and account to be provided to the State of Alaska falsely identified LACKNER as the hunter when in truth and in fact, as LACKNER then knew, RICHARDSON, a non-resident of Alaska, was the hunter and no

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 15 of 31

licensed registered guide-outfitter, Class-A or Assistant Guide was in the field with RICHARDSON during the hunt.

All of which is in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(B) and Title 18, United States Code, Section 2.

## COUNT 7
## CONSPIRACY TO VIOLATE THE LACEY ACT
### (D.W. Sheep)

50.    Paragraphs 1 through 33 of this Indictment are hereby re-alleged in their entirety and incorporated by reference herein.

51.    Between on or about October 2014 and on or about August 12, 2015, within the District of Alaska, and elsewhere, CASEY RICHARDSON, DALE LACKNER, Unindicted Co-conspirator A, and others known and unknown to the Grand Jury, did knowingly combine, conspire, agree and plan with each other to commit acts in violation of the laws of the United States, to wit:

To unlawfully and knowingly sell in interstate commerce wildlife with a market value in excess of $350, by providing guiding, outfitting and other services, for money and other consideration, for the illegal taking, transporting and possessing in interstate commerce of wildlife, that is, a Dall Sheep, knowing that the wildlife had been taken, possessed and transported in violation of the laws of the State of Alaska, specifically, AS 16.05.407.

In violation of Title 16, United States Code, Sections 3372(a)(2)(A) and § 3373(d)(1)(B).

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 16 of 31

## MANNER AND MEANS

52.     The manner and means by which the conspiracy was carried out by the defendants RICHARDSON, LACKNER, and Unindicted Co-conspirator A, included the following:

In August 2015, a PLL client Hunter D.W., having made a deposit for a guided Dall Sheep hunt in Alaska with a registered guide, arrived at the PLL to hunt for Dall Sheep.  Hunter D.W. was not an Alaskan resident and was therefore required to be accompanied by a registered guide to legally hunt for Dall Sheep in Alaska. RICHARDSON, who was not an Alaskan resident nor a registered guide, guided hunter D.W. on his hunt.  Paperwork was filled out falsely by LACKNER and Unindicted Co-conspirator A to conceal the fact that Hunter D.W. illegally hunted and killed a Dall Sheep without being accompanied by a registered guide.  The Dall Sheep trophy was transported from the field and shipped in interstate commerce to the client hunter's home state of Arkansas.

## OVERT ACTS

53.     In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed by the defendants RICHARDSON, LACKNER, Unindicted Co-conspirator A, and others in the District of Alaska and elsewhere:

(OA1)   Between October 2014 through March 2015, RICHARDSON routinely communicated with Hunter D.W. about his upcoming hunt out of PLL.  During the communications, RICHARDSON provided details about the hunt, providing information about which game animals were available in the area and the percentage of game animals

which were legal.  RICHARDSON guaranteed a shot at an animal, and during the communications represented himself as a guide. RICHARDSON arranged the deposit and payments.

(OA2)   Between January 10, 2015 and January 20, 2015, Hunter D.W. and Unindicted Co-conspirator A entered into a preliminary big game guide contract for a Dall Sheep hunt which was to occur between August 8 and August 21, 2015.

(OA3)   Hunter D.W. paid a deposit of $5,000 to Unindicted Co-conspirator A for the hunt.

(OA4)   On August 9, 2015, Hunter D.W. and Unindicted Co-conspirator A signed an Alaska Big Game Commercial Services Board Guide-Outfitter Contract for a grizzly bear and Dall sheep hunt.

(OA5)   Hunter D.W. paid the balance of $7,500 for the hunt to PLL.

(OA6)   After flying into PLL on August 9, 2015, Hunter D.W. was given a tour of the PLL facility and the surrounding geographical area by LACKNER, HARRIS, and Unindicted Co-conspirator A.

(OA7)   On or about August 11, 2015, LACKNER took RICHARDSON and Hunter D.W. by boat to the east end of Ptarmigan Lake; LACKNER then returned to PLL.  RICHARDSON and Hunter D.W. hiked to the "High Culvert" most of the day. When they reached the top of the pass that evening, they entered a large bowl area. RICHARDSON and Hunter D.W. worked their way towards a herd of Dall Sheep and began glassing them.  RICHARDSON identified at least two legal rams for Hunter D.W. to shoot.  Shortly thereafter, Hunter D.W. killed a Dall Sheep.  RICHARDSON and

Hunter D.W. caped and field dressed the Dall Sheep and brought it back to Ptarmigan Lake.  The Dall Sheep was skinned by RICHARDSON and Hunter D.W. as a trophy "shoulder mount." RICHARDSON thereafter radioed LACKNER to bring the boat to pick up RICHARDSON and Hunter D.W. at the east end of Ptarmigan Lake. RICHARDSON, Hunter D.W. and the Dall Sheep hide, horns and meat were transported across Ptarmigan Lake back to PLL.

(OA8)   On August 12, 2015, LACKNER and Unindicted Co-conspirator A completed a hunt record which stated that Hunter D.W. took a sheep on August 12, 2015, in the High Culvert area of WRST.

(OA9)   Hunter D.W. gave RICHARDSON a tip of $1,200.

(OA10) Hunter D.W. transported the harvested Dall Sheep from Alaska to Arkansas.

All of which is in violation of Title 18, United States Code, Section 371.

## COUNT 8
## FALSE RECORD
### (D.W. Sheep)

54.     Paragraphs 1 through 33 of this Indictment are hereby realleged in their entirety and incorporated by reference herein.

55.     On or about August 12, 2015, in the District of Alaska, DALE LACKNER and Unindicted Co-conspirator A did knowingly make a false record and account of wildlife, to wit, a false State of Alaska Big Game Commercial Services Board Hunt Record for a Dall Sheep, in an offense involving the sale and purchase of wildlife with a market value in excess of $350, to wit, a guided Dall Sheep hunt in WRST, knowing that

Page 19 of 31

the record and account to be provided to the State of Alaska claimed that Hunter D.W. killed the Dall Sheep while being guided by LACKNER as the "Licensed Registered Guide-Outfitter, Class-A or Assistant Guide Accompanying Client in the Field" when in truth and in fact, as LACKNER and Unindicted Co-conspirator A then knew, no licensed registered guide-outfitter, Class-A or Assistant Guide was in the field with Hunter D.W. during the hunt.

All of which is in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A)(ii), and Title 18, United States Code, Section 2.

### COUNT 9
### CONSPIRACY TO VIOLATE THE LACEY ACT
### (J.W. Sheep)

56.     Paragraphs 1 through 33 of this Indictment are hereby re-alleged in their entirety and incorporated by reference herein.

57.     Between on or about August 6, 2015, and on or about September 12, 2015, within the District of Alaska, and elsewhere, CASEY RICHARDSON, DALE LACKNER, JEFFREY HARRIS, Unindicted Co-conspirator A, and others known and unknown to the Grand Jury, did knowingly combine, conspire, agree and plan with each other to commit acts in violation of the laws of the United States, to wit:

To unlawfully and knowingly sell in interstate commerce wildlife with a market value in excess of $350, by providing guiding, outfitting and other services, for money and other consideration, for the illegal taking, transporting and possessing in interstate commerce of wildlife, that is, a Dall Sheep, knowing that the wildlife had been taken,

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 20 of 31

possessed and transported in violation of the laws of the State of Alaska, specifically, AS 16.05.407.

In violation of Title 16, United States Code, Sections 3372(a)(2)(A) and 3373(d)(1)(B).

## MANNER and MEANS

58.     The manner and means by which the conspiracy was carried out by the defendants RICHARDSON, LACKNER, HARRIS, and Unindicted Co-conspirator A included the following:

In August 2015, a PLL client Hunter J.W., having made a deposit for a guided Dall Sheep hunt in Alaska with a registered guide, arrived at the PLL to hunt for Dall Sheep.  Hunter J.W. was not an Alaskan resident and was therefore required to be accompanied by a registered guide to legally hunt for Dall Sheep in Alaska. RICHARDSON, who was not an Alaskan resident nor a registered guide, guided Hunter J.W. on his hunt.  Paperwork was filled out falsely by HARRIS and Unindicted Co-conspirator A to conceal the fact that Hunter J.W. illegally hunted and killed a Dall Sheep without being accompanied by a registered guide.  The Dall Sheep trophy was transported from the field and shipped in interstate commerce to the state of Minnesota.

## OVERT ACTS

59.     In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed by the defendants RICHARDSON, LACKNER, HARRIS, Unindicted Co-conspirator A and others in the District of Alaska and elsewhere:

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 21 of 31

(OA1)     On August 6, 2015, Hunter J.W. paid an initial deposit of $6,000 by check to PLL for the hunt; Unindicted Co-conspirator A endorsed the check.

(OA2)     On August 27, 2015, Hunter J.W. paid an additional $6,000 by check for a trophy fee; Unindicted Co-conspirator A endorsed the check.

(OA3)     On August 29, 2015, Hunter J.W. and Unindicted Co-conspirator A signed an Alaska Big Game Commercial Services Board Guide-Outfitter Contract for a Dall Sheep, moose and grizzly bear hunt between August 29 and September 12, 2015.

(OA4)     On August 29, 2015, the first day of the hunt, RICHARDSON, LACKNER, HARRIS, and Hunter J.W. left the lodge on horses to go sheep hunting; Unindicted Co-conspirator A stayed behind at PLL and did not accompany Hunter J.W. into the field.

(OA5)     RICHARDSON, LACKNER, HARRIS, and Hunter J.W. rode the horses about 3 hours to a culvert; HARRIS returned to PLL with the horses.

(OA6)     LACKNER used a spotting scope to spot a herd of sheep. RICHARDSON and Hunter J.W. moved forward to stalk and shoot the sheep.

(OA7)     RICHARDSON directed the hunt and advised Hunter J.W. when to shoot. Hunter J.W. killed a Dall Sheep.  LACKNER was 600 to 1000 yards away at the time of the kill.

(OA8)     On September 12, 2015, HARRIS and Unindicted Co-conspirator A completed a hunt record which stated that Hunter J.W. took a sheep on August 29, 2015, in the Cabin Creek area of WRST.

(OA9)     RICHARDSON received a tip of $1,200 from Hunter J.W.

Page 22 of 31

(OA10)    Hunter J.W. transported the harvested sheep from Alaska to his home state of Georgia by way of Minnesota.

All of which is in violation of Title 18, United States Code, Section 371.

**<u>COUNT 10</u>**
**FALSE RECORD**
**(J.W. Sheep)**
`

60.    Paragraphs 1 through 33 of this Indictment are hereby realleged in their entirety and incorporated by reference herein.

61.    On or about September 12, 2015, in the District of Alaska, JEFFREY HARRIS and Unindicted Co-conspirator A did knowingly make a false record and account of wildlife, to wit, a false State of Alaska Big Game Commercial Services Board Hunt Record for a Dall Sheep, in an offense involving the sale and purchase of wildlife with a market value in excess of $350, to wit, a guided Dall Sheep hunt in WRST, knowing that the record and account to be provided to the State of Alaska claimed that Hunter J.W. killed the Dall Sheep while being guided by a PLL licensed guide as the "Licensed Registered Guide-Outfitter, Class-A or Assistant Guide Accompanying Client in the Field" when in truth and in fact, as HARRIS and Unindicted Co-conspirator A then knew, no licensed registered guide-outfitter, Class-A or Assistant Guide was in the field with Hunter J.W. during the hunt.

All of which is in violation of Title 16, United States Code, Sections 3372(d)(2) and 3373(d)(3)(A)(ii), and Title 18, United States Code, Section 2.

## COUNT 11
## CONSPIRACY TO VIOLATE THE LACEY ACT
## (S.T. Sheep)

62.     Paragraphs 1 through 33 of this Indictment are hereby realleged in their

entirety and incorporated by reference herein.

63.     Between on or about June 13, 2015, to on or about December 21,

2015, within the District of Alaska, and elsewhere, CASEY RICHARDSON, JEFFREY

HARRIS, Unindicted Co-conspirator A, and others known and unknown to the Grand

Jury, did knowingly combine, conspire, agree and plan with each other to commit acts in

violation of the laws of the United States, to wit:

To unlawfully and knowingly sell in interstate commerce wildlife with a market

value in excess of $350, by providing guiding, outfitting and other services, for money

and other consideration, for the illegal taking, acquiring, transporting and possessing in

interstate commerce of wildlife, that is, a Dall Sheep, knowing that the wildlife had been

taken, possessed and transported in violation of the laws of the State of Alaska,

specifically, AS 16.05.407.

In violation of Title 16, United States Code, Sections 3372(a)(2)(A) and

§ 3373(d)(1)(B).

## MANNER and MEANS

64.     The manner and means by which the conspiracy was carried out by the

defendants RICHARDSON, HARRIS, Unindicted Co-conspirator A, and others in

Alaska included the following:

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 24 of 31

In September 2015, PLL client Hunter S.T., having made a deposit for a guided Dall Sheep hunt in Alaska with a registered guide, arrived at the PLL to hunt for Dall Sheep. Hunter S.T. was not an Alaskan resident and was therefore required to be accompanied by a registered guide to legally hunt for Dall Sheep in Alaska. RICHARDSON, who was not an Alaskan resident nor a registered guide, guided Hunter S.T. on his hunt. Paperwork was filled out falsely by HARRIS and Unindicted Co-conspirator A to conceal the fact that Hunter S.T. illegally hunted and killed a Dall Sheep without being accompanied by a registered guide. The Dall Sheep trophy was transported from the field and shipped in interstate commerce to the client hunter's home state of Montana.

## OVERT ACTS

65. In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed by the defendants RICHARDSON, HARRIS, Unindicted Co-conspirator A, and others in the District of Alaska and elsewhere:

(OA1) From on or about June 13, 2015, to on or about July 8, 2015, in exchange for a discounted guided hunt at PLL offered by RICHARDSON, Hunter S.T., a certified flight instructor, flew with RICHARDSON to assist him in getting his high performance, "tail dragger" and complex rating for flying in support of RICHARDSON's pilot's license.

(OA2) On July 29, 2015, Hunter S.T. paid an initial deposit of $5,000 by check to RICHARDSON for the hunt.

(OA3)    On September 14, 2015, Hunter S.T. and Unindicted Co-conspirator A signed an Alaska Big Game Commercial Services Board Guide-Outfitter Contract for a Dall Sheep hunt between September 13 and September 30, 2015.

(OA4)    On September 13, 2015, RICHARDSON glassed the hills with Hunter S.T. and indicated that a herd of Dall Sheep he was glassing contained Dall Sheep that were legal to kill.  Hunter S.T. thereafter harvested a Dall Sheep in Game Management Unit 12, in the Wrangell Mountain Range, between Beaver Creek and the White River.

(OA5)    On September 13, 2015, RICHARDSON, using a Delorme In Reach GPS/Communicator unit, texted HARRIS, "*Ram down! 100% head of dry wash will be out dark or so.  Dead in a nice safe easy spot.*"

(OA6)    On October 1, 2015, HARRIS and Unindicted Co-conspirator A completed a hunt record which stated that Hunter S.T. took a sheep on September 13, 2015, in the Rocker Creek area of WRST.

(OA7)    On December 21, 2015, Hunter S.T. paid a final payment of $5,000 by check to RICHARDSON for the hunt trophy fee.

(OA8)    Hunter S.T. transported the harvested sheep from Alaska to Montana.

All of which is in violation of Title 18, United States Code, Section 371.

## COUNT 12
### FALSE RECORD
### (S.T. Sheep)

66.    Paragraphs 1 through 33 of this Indictment are hereby realleged in their entirety and incorporated by reference herein.

67.     On or about October 1, 2015, in the District of Alaska, JEFFREY HARRIS

and Unindicted Co-conspirator A did knowingly make a false record and account of

wildlife, to wit, a false State of Alaska Big Game Commercial Services Board Hunt

Record for a Dall Sheep, in an offense involving the sale and purchase of wildlife with a

market value in excess of $350, to wit, a guided Dall Sheep hunt in WRST, knowing that

the record and account to be provided to the State of Alaska claimed that Hunter S.T.

killed the Dall Sheep while being guided by a PLL licensed guide as the "Licensed

Registered Guide-Outfitter, Class-A or Assistant Guide Accompanying Client in the

Field" when in truth and in fact, HARRIS and  Unindicted Co-conspirator A then knew,

no licensed registered guide-outfitter, Class-A or Assistant Guide was in the field with

Hunter S.T. during the hunt.

All of which is in violation of Title 16, United States Code, Sections 3372(d)(2)

and 3373(d)(3)(A)(ii), and Title 18, United States Code, Section 2.

## COUNT 13
## FALSE STATEMENT
### (S.T. Sheep)

68.     Paragraphs 1 through 33 of this Indictment are hereby realleged in their

entirety and incorporated by reference herein.

69.     On or about May 25, 2016, within the District of Alaska, the defendant

JEFFREY HARRIS did willfully and knowingly make a materially false, fictitious, and

fraudulent statement and representation in a matter within the jurisdiction of the

executive branch of the Government of the United States, to wit: the Department of

Interior, U.S. Fish and Wildlife Service, by stating that LACKNER was present with

Case 3:17-cr-00087-TMB   Document 2   Filed 08/17/17   Page 27 of 31

Hunter S.T. when he killed his sheep. The statement and representation was false because, as HARRIS then and there knew only RICHARDSON was with Hunter S.T. when he killed the Dall Sheep and RICHARDSON was not a licensed registered guide-outfitter, Class-A or Assistant Guide at that time.

All of which is in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT 14
## UNLAWFUL BAITING OF GAME

70.     Paragraphs 1 through 33 of this Indictment are hereby realleged in their entirety and incorporated by reference herein.

71.     Between on or about August 20, 2014 and May 25, 2016, JEFFREY HARRIS and Unindicted Co-conspirator A established illegal bear bait stations in the WRST as a means of predator control without first obtaining a permit from the State of Alaska, Department of Fish and Game, and in an area where bear bait stations were not permitted by the State of Alaska, Department of Fish and Game, nor the NPS.

All of which is in violation of Title 5, AAC, Chapter 92.044(a), incorporated and made applicable within WRST by Title 36, Code of Federal Regulations, Section 2.2(b)(4), and Title 18, United States Code, Section 2.

## COUNT 15
## CONSPIRACY TO USE SUBSTANCE TO INCAPACITATE GAME

72.     Paragraphs 1 through 33 of this Indictment are hereby realleged in their entirety and incorporated by reference herein.

73.     From on or about June 6, 2015, through on or about May 25, 2016, CASEY RICHARDSON, JEFFREY HARRIS, Unindicted Co-conspirator A, and others known

Page 28 of 31

and unknown with to the Grand Jury, did knowingly combine, conspire, agree and plan with each other to commit acts in violation of the laws of the United States, to wit:

Distribute and use a substance which temporarily incapacitates game, to wit: xylitol, a substance which incapacitates and kills canines, including wolves, by interfering with the processing of their internal organs resulting in death, as a means of predator control.

In violation of Title 5, Alaska Administrative Code, Chapter 92.080(2), which is incorporated and made applicable within WRST by Title 36, Code of Federal Regulations, Section 2.2(a)(2), and, as of January 16, 2016, Title 36, Code of Federal Regulations, Section 13.42(g)(2).

## MANNER and MEANS

74. The manner and means by which the conspiracy was carried out by the defendants RICHARDSON, HARRIS, Unindicted Co-conspirator A, and others in Alaska included the following:

In order to limit the local and transient wolf population in and around PLL and to increase the Dall Sheep and moose populations, the defendants RICHARDSON, HARRIS, Unindicted Co-conspirator A, and others in Alaska, used xylitol, a substance deadly to canines, by distributing xylitol on bait piles and in rabbit carcasses for predators, including wolves, to consume.

## OVERT ACTS

75. In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed by the defendants RICHARDSON, HARRIS,

Unindicted Co-conspirator A and others in the District of Alaska and elsewhere:

(OA1)    On June 6, 2015, while communicating on RICHARDSON'S Facebook account, HARRIS wrote to RICHARDSON, "*what's that sweetner [sic] you said that kills wolves?*"  RICHARDSON replied, "*Zyletol [xylitol]*."  RICHARDSON sent HARRIS a link regarding xylitol toxicity to dogs.

(OA2)    On September 27, 2015, while communicating on RICHARDSON'S Facebook account, HARRIS wrote to RICHARDSON, "*We're gonna kill a couple rabbits and fill them with zylotol[xylitol]…And hang them about 3ft up around the bait pile….With 4lb test line.  Let them snatch them and have a sweet treat.*"  RICHARDSON responded, "*Excellent.*"

(OA3)    On September 28, 2015, Unindicted Co-conspirator A purchased three bags of xylitol, each weighing 2.5 pounds, at the Sunshine Health Food Store in Fairbanks, Alaska.

(OA4)    On November 10, 2015, Unindicted Co-conspirator A purchased three bags of xylitol, each weighing 2.5 pounds, at the Sunshine Health Food Store in Fairbanks, Alaska.

(OA5)    On November 24, 2015, HARRIS, communicating on his Facebook account, wrote to the winter caretaker at PLL, "*Don't forget the Xylotol[xylitol].  Make meatballs and put it in the very middle if [of] the [frozen] lake.  They will be dead before they can leave the lake.*"

(OA6)    On May 25, 2016, HARRIS and Unindicted Co-conspirator A possessed five bags of xylitol, each weighing 2.5 pounds, at the PLL.

All of which is in violation of Title 18, United States Code, Section 371.

A TRUE BILL.


s/ Grand Jury Foreperson
GRAND JURY FOREPERSON



s/ Retta-Rae Randall
RETTA-RAE RANDALL
United States of America
Assistant U.S. Attorney



s/ Bryan Schroder
BRYAN SCHRODER
United States of America
Acting United States Attorney



DATE:      8-15-17