BRYAN SCHRODER
United States Attorney

RETTA-RAE RANDALL
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: rettarae.randall@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. 3:17-cr-00087-01-TMB |
| ) | |
| Plaintiff, ) | |
| ) | **PLEA AGREEMENT** |
| vs. ) | |
| ) | |
| CASEY RICHARDSON, ) | |
| ) | |
| Defendant. ) | |
| ———————————————— ) | |

**Unless the parties jointly inform the Court in writing of any additional agreements, this document in its entirety contains the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities unless specifically mentioned herein.**

# I.   SUMMARY OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11

## A.   Summary of Agreement

The defendant agrees to plead guilty to Count 5: misdemeanor Conspiracy to Violate the Lacey Act, in violation of 18 U.S.C. § 371, Count 7: felony Conspiracy to Violate the Lacey Act, in violation of 18 U.S.C. § 371, and Count 11: felony Conspiracy to Violate the Lacey Act, in violation of 18 U.S.C. § 371.

The United States agrees, pursuant to Fed.R.Crim.P. 11(c)(1)(B), to make a sentencing recommendation at the low end of the guideline range; the defendant is free to make any sentencing recommendations consistent with this agreement.

The parties agree that the fair market value of the guided Dall sheep hunts was $12,000 each. The parties also agree that the amount of $12,000 is the restitution value for the wildlife in each count of conviction. Therefore, pursuant to this plea agreement, the defendant agrees to pay the following as his share of restitution for each count of conviction: $6000 for the defendant's Dall Sheep (Count 5), $4000 for the D.W. Dall Sheep (Count 7), and $4000 for the S.T. Dall Sheep (Count 11), for a total payment in restitution of $14,000.

The parties have no agreement as to the amount of any fine.

The defendant agrees that any State of Alaska guiding license he may have is hereby surrendered and revoked.

The defendant agrees to voluntarily abandon to the United States Fish and Wildlife Service and the National Park Service, the moose and Dall Sheep trophies taken in

Alaska in 2014 as well as the grizzly bear hide (*Ursus arctos*), all of which were seized on May 25, 2016.

The parties have no agreement regarding the resolution of any criminal charges being considered by the State of Alaska.

The United States agrees not to prosecute the defendant further for any other offense related to the events that resulted in the charges contained in the Indictment. After the Court accepts the plea agreement and imposes the sentence, the United States agrees to dismiss the remaining counts as they relate to the defendant: Counts 6, 9, and 15.

The defendant will waive all rights to appeal the convictions and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the convictions and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the pleas.

**B.     Federal Rule of Criminal Procedure 11**

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) will control this plea agreement. Thus, the defendant may not withdraw from this agreement or the guilty pleas if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

//

//

//

## II.  CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE

### A.  Charges and Elements

**Conspiracy to Violate the Lacey Act (misdemeanor):** Count 5, a violation of 18 U.S.C. § 371, the elements of which are the following:

First, there was an agreement between two or more persons to commit at least one crime as charged in the indictment, specifically, violation of the Lacey Act;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

In order for the defendant to be found guilty of violating the Lacey Act, Sections 3372(a)(2)(A) and 3373(d)(2) of Title 16 of the United States Code, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant in the exercise of due care should have known that the wildlife had been taken, possessed, or transported in violation of, or in a manner unlawful under any laws and regulations of the State of Alaska;

Second, the defendant transported and received the wildlife in interstate or foreign commerce.

**Conspiracy to Violate the Lacey Act (felonies):** Counts 7 and 11, a violation of 18 U.S.C. § 371, the elements of which are the following:

First, there was an agreement between two or more persons to commit at least one crime as charged in the indictment, specifically, violation of the Lacey Act;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

In order for the defendant to be found guilty of violating the Lacey Act, Sections 3372(a)(2)(A) and 3373(d)(1)(B) of Title 16 of the United States Code, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant knew that the wildlife had been taken, possessed, or transported in violation of, or in a manner unlawful under any laws and regulations of the State of Alaska.

Second, the market value of the wildlife actually taken, possessed, or transported exceeded $350; and

Third, the defendant transported, sold, or acquired in interstate or foreign commerce the wildlife by knowingly engaging in conduct that involved their sale. "Sale" for purposes of 16 U.S.C. § 3373(d)(1)(B) includes both the agreement to receive consideration for guiding or outfitting services and the actual provision of such guiding or outfitting services.

**B.      Factual Basis**

The defendant admits the truth of the allegations in Counts 5, 7, and 11 of the Indictment and the truth of the following statement, and the parties stipulate that the

Court may rely upon this statement to support the factual basis for the guilty pleas and for the imposition of the sentence:

### Count 5: Conspiracy to Violate the Lacey Act (Richardson Hunt)

On or about September 4, 2014, within the District of Alaska, and elsewhere, the defendant, co-defendant Dale Lackner, and others, did knowingly combine, conspire, agree and plan with each other to commit acts in violation of the laws of the United States, to wit: to unlawfully and knowingly export and transport in interstate and foreign commerce wildlife, a Dall Sheep, when in the exercise of due care, the defendant should have known that said wildlife was unlawfully taken and transported in violation of the laws and regulations of the State of Alaska, specifically, Alaska State Statute 16.05.407, which requires that nonresident hunters hunting big game animals must be accompanied by a licensed registered/master guide for nonresident hunting of brown bear, goat and sheep.

On August 30, 2014, the defendant obtained a non-resident brown bear locking tag (#1404543), having obtained an annual non-resident hunting license (#4722517) for the 2014 season on November 27, 2013. In September 2014, the defendant traveled from his residence in Montana to Ptarmigan Lake Lodge ("PLL") within Wrangell-St. Elias National Park and Preserve ("WRST") in Alaska. The defendant was not an Alaskan resident and was therefore required to be accompanied by a registered guide to legally hunt for Dall Sheep in Alaska. Co-defendant Lackner was an Alaska resident and allowed to hunt for Dall Sheep without a registered guide. Paperwork was filled out falsely by co-defendant Lackner to conceal the fact that the defendant illegally hunted

and killed a Dall Sheep without being accompanied by a registered guide. The defendant did not file required paperwork for the Dall Sheep he killed to conceal his illegal hunt. Co-defendant Lackner arranged for the transportation of the defendant's illegally killed Dall Sheep trophy from the field in Alaska through Canada to the defendant's home state in Montana.

Specifically, on or about September 3, 2014, the defendant, co-defendant Lackner, and Hunter R.C. rode horses out to a location known as the Cabin Creek Culvert and spent the night. On or about September 4, 2014, the defendant and Hunter R.C. rode the horses up the mountain and disembarked to stalk Dall Sheep up the mountain; co-defendant Lackner remained with the horses.

On or about September 4, 2014, the defendant killed a Dall Sheep near the Rocker Creek Tributary. On September 5, 2014, the defendant posted on his Facebook account: "*Success!!!! Great two days on the mountain with R.C. and DALE LACKNER! Thank you for letting me part of a great hunt? (sic)*."

On September 12, 2014, co-defendant Lackner completed a State of Alaska Department of Fish and Game Harvest Report for a Dall Sheep identifying himself as the hunter of defendant's sheep. The defendant submitted no hunt reports for bear or sheep in 2014. On or after September 12, 2014, co-defendant Lackner exported the Dall Sheep trophy through Canada to the defendant in Montana.

### Count 7: Conspiracy to Violate the Lacey Act (D.W. Hunt)

Between October 2014 and on or about August 12, 2015, within the District of Alaska, and elsewhere, the defendant, co-defendant Lackner, U.R., the owner of PLL in

WRST and others did knowingly combine, conspire, agree and plan with each other to commit acts in violation of the laws of the United States, to wit: to unlawfully and knowingly sell in interstate commerce wildlife with a market value in excess of $350, by providing guiding, outfitting and other services, for money and other consideration, for the illegal taking, transporting and possessing in interstate commerce of wildlife, that is, a Dall Sheep, knowing that the wildlife had been taken, possessed and transported in violation of the laws of the State of Alaska, specifically, AS 16.05.407, which requires that nonresident hunters hunting big game animals must be accompanied by a licensed registered/master guide for nonresident hunting of brown bear, goat and sheep.

In August 2015, a PLL client Hunter D.W., having made a deposit for a guided Dall Sheep hunt in Alaska with a registered guide, arrived at the PLL to hunt for Dall Sheep. Hunter D.W. was not an Alaskan resident and was therefore required to be accompanied by a registered guide to legally hunt for Dall Sheep in Alaska. The defendant, who was not an Alaskan resident nor a registered guide, guided hunter D.W. on his hunt. Paperwork was filled out falsely by co-defendant Lackner and U.R. the owner of PLL in WRST, to conceal the fact that Hunter D.W. illegally hunted and killed a Dall Sheep without being accompanied by a registered guide. The Dall Sheep trophy was transported from the field and shipped in interstate commerce to the client hunter's home state of Arkansas.

Specifically, between October 2014 through March 2015, the defendant communicated with Hunter D.W. about his upcoming hunt out of PLL. During the communications, the defendant provided details about the hunt, providing information

about which game animals were available in the area and the percentage of game animals which were legal. The defendant guaranteed a shot at an animal, and during the communications represented himself as a guide. The defendant arranged the deposit and payments.

Between January 10, 2015 and January 20, 2015, Hunter D.W. and U.R., the owner of PLL in WRST, entered into a preliminary big game guide contract for a Dall Sheep hunt which was to occur between August 8 and August 21, 2015. Hunter D.W. paid a deposit of $5,000 to U.R. for the hunt. On August 9, 2015, Hunter D.W. and U.R. signed an Alaska Big Game Commercial Services Board Guide-Outfitter Contract for a grizzly bear and Dall sheep hunt. Hunter D.W. paid the balance of $7,500 for the hunt to PLL.

After flying into PLL on August 9, 2015, Hunter D.W. was given a tour of the PLL facility and the surrounding geographical area by co- defendants Lackner and Harris, and U.R.

On or about August 11, 2015, co-defendant Lackner took the defendant and Hunter D.W. by boat to the east end of Ptarmigan Lake; co-defendant Lackner then returned to PLL. The defendant and Hunter D.W. hiked to the "High Culvert" most of the day. When they reached the top of the pass that evening, they entered a large bowl area. The defendant and Hunter D.W. worked their way towards a herd of Dall Sheep and began glassing them. The defendant identified at least two legal rams for Hunter D.W. to shoot. Shortly thereafter, Hunter D.W. killed a Dall Sheep. The defendant and Hunter D.W. caped and field dressed the Dall Sheep and brought it back to Ptarmigan

Lake. The Dall Sheep was skinned by the defendant and Hunter D.W. as a trophy "shoulder mount." The defendant thereafter radioed co-defendant Lackner to bring the boat to pick up the defendant and Hunter D.W. at the east end of Ptarmigan Lake. The defendant, Hunter D.W. and the Dall Sheep hide, horns and meat were transported across Ptarmigan Lake back to PLL by co-defendant Lackner. Hunter D.W. through co-defendant Lackner gave the defendant a tip of $1,200. Hunter D.W. transported the harvested Dall Sheep from Alaska to Arkansas.

On August 12, 2015, co-defendant Lackner and U.R. completed a hunt record which stated that Hunter D.W. took a sheep on August 12, 2015, in the High Culvert area of WRST.

### Count 11: Conspiracy to Violate the Lacey Act (S.T. Hunt)

Between on or about June 13, 2015, to on or about December 21, 2015, within the District of Alaska, and elsewhere, the defendant, co-defendant Harris, and U.R., the owner of PLL in WRST, and others, did knowingly combine, conspire, agree and plan with each other to commit acts in violation of the laws of the United States, to wit: to unlawfully and knowingly sell in interstate commerce wildlife with a market value in excess of $350, by providing guiding, outfitting and other services, for money and other consideration, for the illegal taking, acquiring, transporting and possessing in interstate commerce of wildlife, that is, a Dall Sheep, knowing that the wildlife had been taken, possessed and transported in violation of the laws of the State of Alaska, specifically, AS 16.05.407, which requires that nonresident hunters hunting big game animals must be

accompanied by a licensed registered/master guide for nonresident hunting of brown bear, goat and sheep.

In September 2015, PLL client Hunter S.T., having made a deposit of $5000 for a guided Dall Sheep hunt in Alaska with a registered guide, arrived at the PLL to hunt for Dall Sheep. Hunter S.T. was not an Alaskan resident and was therefore required to be accompanied by a registered guide to legally hunt for Dall Sheep in Alaska. The defendant, who was not an Alaskan resident nor a registered guide, guided Hunter S.T. on his hunt.

Between about June 13, 2015, to on or about July 8, 2015, in exchange for a discounted guided hunt at PLL offered by the defendant, Hunter S.T., a certified flight instructor, flew with the defendant to assist him in getting his high performance rating for flying in support of the defendant's pilot's license.

On July 29, 2015, Hunter S.T. paid an initial deposit of $5,000 by check to the defendant for the hunt. On September 14, 2015, Hunter S.T. and U.R., the owner of PLL in WRST, signed an Alaska Big Game Commercial Services Board Guide-Outfitter Contract for a Dall Sheep hunt between September 13th and September 30, 2015.

On September 13, 2015, the defendant glassed the hills with Hunter S.T. and indicated that a herd of Dall Sheep he was glassing contained Dall Sheep that were legal to kill. Hunter S.T. thereafter harvested a Dall Sheep in Game Management Unit 12, in the Wrangell Mountain Range, between Beaver Creek and the White River. On September 13, 2015, the defendant, using a Delorme In Reach GPS/Communicator unit,

texted co-defendant Harris, "*Ram down! 100% head of dry wash will be out dark or so. Dead in a nice safe easy spot.*"

On October 1, 2015, co-defendant Harris and U.R. completed a false State of Alaska Big Game Commercial Services Board Hunt Record for a Dall Sheep hunt which stated that Hunter S.T. took a sheep while being guided by a PLL licensed guide on September 13, 2015, in the Rocker Creek area of WRST, when co-defendant Harris and U.R. knew that no licensed registered guide-outfitter, Class-A or Assistant Guide was in the field with Hunter S.T. during the hunt.. On December 21, 2015, Hunter S.T. paid a final payment of $5,000 by check for the hunt trophy fee. The Dall Sheep trophy was transported from the field and shipped in interstate commerce to the Hunter S.T.'s home state of Montana.

### C. Statutory Penalties and Other Matters Affecting Sentence

#### 1. Statutory Penalties

The maximum statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty pleas, are as follows:

#### Count 5: Conspiracy to Violate the Lacey Act (misdemeanor)

1) 1 year of imprisonment;

2) a maximum $100,000 fine;

3) a $25 mandatory special assessment;

4) 5 years of probation;

5) three years of supervised release.

### Counts 7 and 11: Conspiracy to Violate the Lacey Act (felonies)

1) 5 years imprisonment;

2) a maximum $250,000 fine;

3) a $100 mandatory special assessment;

4) 5 years of probation;

5) three years of supervised release.

## 2. Other Matters Affecting Sentence

### a. Conditions affecting the defendant's sentence

The following conditions may also apply and affect the defendant's sentence:

1) pursuant to Comment 7 of U.S.S.G. § 5E1.2, the Court may impose an additional fine to pay the costs to the government of any imprisonment and supervised release term; 2) pursuant to 18 U.S.C.§ 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 3) upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release; 4) the Court may order the defendant to pay restitution pursuant to the 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1, and if 18 U.S.C. § 3663A (mandatory restitution for certain crimes) applies, the Court shall order the defendant to pay restitution.

### b. Payment of Special Assessment

The defendant agrees to pay the entire special assessment in this case on the day the Court imposes the sentence. All payments will be by check or money order, and are

to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

### c. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. If applicable, any defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense and will not be permitted to return unless the defendant specifically receives the prior approval of the United States Attorney General.

### D. Restitution

The parties agree that the amount of $12,000 is the restitution value for the wildlife in each count of conviction. Therefore, pursuant to this plea agreement, the defendant agrees to pay the following as his share of restitution for each count of conviction: $6000 for the defendant's Dall Sheep (Count 5), $4000 for the D.W. Dall Sheep (Count 7), and $4000 for the S.T. Dall Sheep (Count 11), for a total payment in restitution of $14,000.

### E. Fine

The parties have no agreement about a fine in this case.

### F. Forfeiture

Forfeiture is not applicable to this plea agreement.

//

### G. Voluntary Abandonment

The defendant agrees to forever abandon and disclaim any right, title, and interest the defendant may have in the moose and Dall Sheep trophies taken in Alaska in 2014 as well as the grizzly bear hide (*Ursus arctos*), all of which were seized on May 25, 2016.

The defendant also agrees to abandon and disclaim any right, title, and interest the defendant may have in the Weatherby Mark V, .378 Magnum, Serial #: H128160 with attached Leupold Scope, Serial #: 232003R378, which was seized on May 25, 2016, to the United States Fish & Wildlife Service and the National Park Service. The above described firearm were used to illegally kill wildlife at PLL.

## III. ADVISORY UNITED STATES SENTENCING GUIDELINES, GUIDELINE APPLICATION AGREEMENTS, SENTENCING RECOMMENDATIONS

### A. Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Commission Guidelines [U.S.S.G.] as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The U.S.S.G. do not establish the statutory maximum or minimum sentence applicable to the offenses to which the defendant is pleading guilty. The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G.

### B. Guideline Application Agreements

The parties have no agreements on any guideline applications unless set forth below in this section.

//

### 1. Acceptance of responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility, the United States will not make or, if already made, will withdraw this recommendation and motion.

### 2. Additional Guideline Agreements

The defendant also agrees that any State of Alaska guiding he may have is hereby surrendered and revoked. The United States agrees, pursuant to Fed.R.Crim.P. 11(c)(1)(B), to make a sentencing recommendation at the low end of the guideline range; the defendant is free to make any sentencing recommendations consistent with this agreement.

### C.      Sentencing Recommendations

The United States Probation Office will prepare the defendant's pre-sentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the guideline sentence range

calculation the U.S.P.O. recommends, as well as present evidence in support of their respective sentencing arguments.

The parties are free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on the stipulated facts set forth in Section II.B, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory U.S.S.G., and the sentencing factors set forth in 18 U.S.C. § 3553.

## IV.   ADDITIONAL AGREEMENTS BY UNITED STATES

In exchange for the defendant's guilty pleas and the Court's acceptance of the defendant's pleas and the terms of this agreement, the United States agrees that it will not prosecute the defendant further for any other offense – now known – arising out of the subject of the investigation related to the charges brought in the Indictment in this case and the defendant's admissions set forth in Section II.B.

Provided, however, if the defendant's guilty pleas or sentences in federal or state court is/are rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated as well as for perjury and false statements. The defendant hereby agrees that he waives any defense that the statute of limitations bars the prosecution of such a reinstated charge. After the Court accepts the plea agreement and after sentencing, the United States will dismiss the remaining counts (Counts 6, 9, and 15) as they relate to the defendant.

## V. WAIVER OF TRIAL RIGHTS, APPELLATE RIGHTS, COLLATERAL ATTACK RIGHTS, CLAIM FOR ATTORNEY FEES AND COSTS, AND RULE 410

### A. Trial Rights

Being aware of the following, the defendant waives these trial rights:

- If pleading to an Information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial – the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

## B.    Appellate Rights

The defendant waives the right to appeal the convictions resulting from the entry of guilty pleas to the charges set forth in this agreement. The defendant further agrees that if the Court imposes a sentence that does not exceed the statutory maximum penalties – as set forth in Section II.C above in this agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, any fines or restitution.

By waiving these rights, the defendant understands that the convictions and sentence the Court imposes will be final. No other court will conduct appellate review of the convictions or the sentence.

The defendant agrees that the appellate and collateral attack waivers contained within this agreement will apply to any 18 U.S.C. § 3582(c) modifications, as well as the district court's decision to deny any such modification.

Should the defendant file a notice of appeal in violation in this agreement, it will constitute a material breach of the agreement. The government is free to reinstate any

dismissed charges, and withdraw any motions for downward departures, or sentences below the mandatory minimum made pursuant to 18 U.S.C. § 3553(e).

## C.    Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the resulting convictions and/or sentence – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution – the Court imposes. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to the conviction or sentence alleging ineffective assistance of counsel – based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty pleas.

## D.    Claim for Attorney Fees and Costs

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

## E.    Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement set forth in Section II.B. The defendant agrees that the statements made by him in signing this agreement shall be deemed usable and admissible against the defendant as stipulations in any hearing, trial or sentencing that may follow, even if the defendant fails to enter a guilty plea pursuant to this agreement. The foregoing provision acts as a modification, and express waiver, of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f).

## VI.    ADEQUACY OF THE AGREEMENT

Pursuant to Local Criminal Rule 11.2 (d)(7) and (8), this plea agreement is appropriate in that it conforms with the sentencing goals that would otherwise be applicable to the defendant's case if the defendant had gone to trial and had been convicted on all counts in the charging instrument.

## VII.    THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF   THIS PLEA AGREEMENT

I, CASEY RICHARDSON, the defendant, affirm this document contains all of the agreements made between me – with the assistance of my attorney – and the United States regarding my pleas.  There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement.  If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty pleas.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty.  If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my pleas.

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations will constitute a material breach of this agreement.  If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this

agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offenses to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my pleas. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty pleas. My attorney and I have discussed all possible defenses to the charges to which I am pleading guilty. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have

discussed the statutes applicable to my offense and sentence as well as the possible effect

the U.S.S.G. may have on my sentence.

Based on my complete understanding of this plea agreement, I therefore admit that

I am guilty of Counts 5, 7, and 11 of the Indictment.

DATED: 4/12/18

CASEY RICHARDSON
Defendant

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charges to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: 3-20-18

MICHAEL A. MOBERLY
Attorney for Casey Richardson

On behalf of the United States, the following accepts the defendant's offer to plead guilty under the terms of this plea agreement.

DATED: 3/21/18

BRYAN SCHRODER
United States of America
United States Attorney